J. S73014/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  C.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF:  J.B., NATURAL MOTHER | : | No. 609 WDA 2016 |

Appeal from the Order Entered April 15, 2016,
in the Court of Common Pleas of Allegheny County
Orphans' Court Division at No. CP-02-AP-0000075-2015

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　　**FILED NOVEMBER 14, 2016**

J.B. ("Mother") appeals from the order dated April 6, 2016, and entered April 15, 2016,[1] in the Court of Common Pleas of Allegheny County, Orphans' Court Division, granting the petition of the Allegheny County Office of Children, Youth and Families ("CYF") and involuntarily terminating her parental rights to her dependent, male child, C.F. ("Child"), born in March of 2013, pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8), and (b).[2]  After review, we affirm.

---

[1] While the order was dated April 6, 2016, notice pursuant to Pa.R.C.P. 236 was not provided until April 15, 2016.  ***See Frazier v. City of Philadelphia***, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given").

[2] In the same order, the trial court terminated the parental rights of Child's father, D.F. ("Father"), also pursuant to Sections 2511(a)(2), (5), (8), and (b).  Father has filed an appeal at Superior Court Docket No. 674 WDA 2016.

The trial court summarized the relevant procedural and factual history, in part, as follows:

The family came to the attention of CYF on the day of the child's birth – [in] March [of] 2013 – when Mother and the infant tested positive for cocaine and methadone. CYF did not remove the child at that time. The child remained with Mother until they were discharged on April 1, 2013. Father was at the hospital when the child was born. He was listed as the Father on the birth certificate and acknowledged paternity at a later time. CYF installed in-home services in weeks after Mother's discharge. CYF offered similar services to Father, but soon after the birth, Father was incarcerated. Only a couple weeks later, on April 18, 2013, CYF removed the child after allegations of further drug use. Following a shelter hearing, the child was returned to Mother's care so long as she resided with her step-sister. The child remained in Mother's care until June 6, 2013, when he was removed following another Emergency Custody Authorization. Mother had tested positive for cocaine, opiates, and benzodiazepines; the caseworker had witnessed Mother "manipulate" – i.e., tamper – with the urine screen. On June 12, 2013, the child was adjudicated dependent, and ultimately never returned to either parent's care. The child has been placed in the foster home of C.D. and R.M. R.M. is Mother's step[-]sister.

CYF established a Family Service Plan ("FSP") to aid in reunification of the parents with their child. FSPs are comprised of goals. The goals are designed to address and resolve the conditions that led to the child's removal from parental care. Mother's goals included: address drug and alcohol concerns; address parenting concerns; address mental health concerns; obtain and maintain sobriety; work with in-home services; address lack of stable housing; participate in psychological evaluation; visit the child. Later, after it was alleged that Mother's current boyfriend physically abused her, CYF added

> another goal: address domestic violence concerns. . . .
>
> Mother was largely noncompliant with her goals. She has not addressed her drug addiction, [sic] she regularly missed drug screens. She has not addresses [sic] the ongoing domestic violence in her home. With the exception of approximately one month in December 2014,[3] Mother's visitations were never unsupervised. . . .

Trial court opinion, 6/10/16 at 1-3.

On April 5, 2015, CYF filed a petition to terminate parental rights. Thereafter, the trial court conducted a hearing on April 6, 2016. At the hearing, CYF presented the testimony of CYF caseworker, Darlene Lewis, and Family Resources prevention services specialist (also referred to as a parenting specialist), Mary Safrin. Father additionally testified on his own behalf. Counsel further stipulated to the submission of the psychological evaluations of Neil Rosenblum, Ph.D., clinical psychologist.[4] (Notes of testimony, 4/6/16 at 130-132.) While Mother was present, she did not testify, and was absent from the courtroom for a lengthy portion of the hearing.

---

[3] Mother gave birth to another child in December of 2014. This child was also born with drugs in his system and ultimately adjudicated dependent, as well. (Notes of testimony, 4/6/16 at 78-79, 104, 109.)

[4] Dr. Rosenblum's evaluations, which included individual evaluations of Mother and foster parents and interactional evaluations of Child with Mother and foster parents, were marked as Exhibit CYF 5.

By order dated April 6, 2016, and entered April 15, 2016, the trial court involuntarily terminated Mother's and Father's parental rights to Child. On April 29, 2016, Mother, through appointed counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issue for our review:

> Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of Appellant's parental rights would serve the needs and welfare of the Child pursuant to 23 Pa.C.S.[A.] §2511(b)?

Mother's brief at 5.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct,

weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." **In re C.S.**, 761 A.2d 1197, 1201 (Pa.Super. 2000) (**en banc**), quoting **Matter of Adoption of Charles E.D.M. II**, 708 A.2d 88, 91 (Pa. 1998).

In this case, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). **In re B.L.W.**, 843 A.2d 380, 384 (Pa.Super. 2004) (**en banc**). Here, Mother concedes grounds for termination under Section 2511(a)(2). (**See** Mother's brief at 10.) We, therefore, analyze the court's termination pursuant to Section 2511(b) only, which provides as follows:

> **(b)   Other   considerations.--**The   court   in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.   The rights of a parent shall not be terminated    solely    on    the    basis    of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.   With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511 (b).

With regard to Section 2511(b), the Pennsylvania Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa.Super. 2010) (citations omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010), citing *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa.Super. 2008) (internal citations omitted).

As further recognized in *T.S.M.*:

> [C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to his biological parent, especially considering the existence or lack thereof of bonds to a pre-adoptive family. As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. *See, e.g., R.J.T.,* 9 A.3d at 1190 (holding that statutory criteria of whether child has been in care for fifteen of the prior twenty-two months should not be viewed as a "litmus test" but rather as merely one of many factors in considering goal change). Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

71 A.3d at 268-269.

Instantly, in examining Section 2511(b) and finding sufficient grounds for termination, the trial court reasoned:

> Mother's refusal to access available drug and alcohol treatment is most troubling. Likewise, this Court cannot ignore the fact that she has placed herself in – and this would place the child in – a physically abusive environment. These dangerous conditions have prevented Mother from conducting any real parenting outside of supervised visitations. At the time of the termination hearing, child had not

been in the parents' care for approximately 34 months.

According to Dr. Neil Rosenblum's psychological evaluation, the child is thriving with his pre-adoptive foster parents C.D. and C.D.'s mother R.M. He calls C.D. "Mom" and R.M. "Mimi." The child enjoys attention from R.M.'s paramour who he calls "poppy" as well as R.M.'s younger children. The child's speech and attention span [have] improved while in the foster parent's care. Dr. Rosenblum found that the foster parents are strongly attached to the child, who is the center of attention in the home. He has lived with the family essentially his entire life. Critically, Dr. Rosenblum found that "removing [Child] from his present family environment would be not only highly disruptive to his developmental progress and attachment, but would be traumatic and likely cause severe emotional distress for this child." Dr. Rosenblum emphasized that Mother is appropriate with the child and has demonstrated positive parenting instincts, but he concluded that "because of [Mother's mental health and substance abuse concerns] there is no way to view her as being able to provide [the child] with a stable and secure family environment as her own personal functioning remains so fragile and unstable at this time." Dr. Rosenblum further concluded, and this Court agreed, that given the child's strong attachment to his foster parents, adoption is clearly the "only permanency outcome that would allow [the child continuity] of care and the opportunity to remain in a stable family environment capable of meeting his needs at this time and in the years to come."

. . . Because the child is placed with kin, it is this Court's hope that positive, healthy contact will remain between the child and his biological parents. But it is crystal clear that termination serves the child's best needs and welfare. The Court feels strongly that the child's pre-adoptive foster parents are the best judges of whether future contact is in the child's best interests.

Trial court opinion, 6/10/16 at 7-8 (citations to record omitted).

Mother, however, argues:

> [n]one of the witnesses or documentary evidence presented by CYF referred to the emotional effect that termination of [Mother's] parental rights would have on [Child]. Even the CYF caseworker failed to address issues of parent-child bonds and potential effects of termination of parental rights on [Child]. Likewise, the Opinion of the trial court in support of its decision fails to analyze the emotional effect that termination of parental rights would have on [Child].

Mother's brief at 13 (citations to record omitted). We disagree.

This court finds that Mother's argument regarding Section 2511(b) lacks merit. Upon review, as the trial court's factual findings are supported by the record, and the court's legal conclusions are not the result of error of law or abuse of discretion, we affirm the trial court's order with regard to Subsection (b). *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Based on the foregoing analysis of the trial court's termination of Mother's parental rights, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/2016

- 10 -